# IN THE SUPREME COURT OF TEXAS

══════════
No. 18-0986
══════════

NORTH EAST INDEPENDENT SCHOOL DISTRICT AND TEXAS COMMISSIONER OF EDUCATION, PETITIONERS,

v.

DEHANN RIOU, RESPONDENT

══════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS
══════════════════════════════

**Argued January 7, 2020**

JUSTICE BLAND delivered the opinion of the Court.

A school board ended a teacher's continuing contract because the teacher failed to record grades and evaluate her pupils' progress for half of the school year. In this case, we consider whether state and federal laws requiring school districts to record grades and evaluate student progress provide standards of conduct for the teaching profession, generally recognized and applied throughout the state, such that the teacher's failure to comply with district policies implementing those laws supports termination for "good cause."

Education Code section 21.156(a) provides that a school district may end a continuing contract with a teacher for "good cause."[1] The statute defines "good cause" as "the failure to meet

---

[1] TEX. EDUC. CODE § 21.156(a).

the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state."[2] Based on an independent hearing examiner's findings, the North East Independent School District board voted to end Dehann Riou's continuing teaching contract. Riou appealed the decision to the Commissioner of Education. The Commissioner upheld the decision, agreeing with the examiner that Riou's conduct was "good cause per se" for termination. Riou then sought judicial review, arguing that the Education Code has no "good cause per se" standard and that the district failed to adduce evidence of accepted standards from similarly situated districts to show good cause. The trial court ruled for Riou, reversing the Commissioner's decision. The court of appeals affirmed, agreeing with Riou that "good cause per se" has no basis in section 21.156(a)'s good cause definition, and the board's decision must be reversed because the district adduced no evidence of generally accepted standards of professional conduct from similarly situated school districts.

In this Court, the district and the Commissioner contend that the evidence supports the board's decision. In addition, as a threshold matter, they contend that Riou failed to challenge the application of a good cause per se exception at the local level, and thus she failed to preserve her complaint for judicial review.

We hold that Riou preserved her complaint. Riou challenged the sufficiency of the evidence supporting good cause to end her contract before the school board and the Commissioner. Riou's argument that the Commissioner excused this lack of evidence by relying on an improper "per se" standard falls within this challenge. We further hold that the Commissioner erred in

[2] *Id.*

employing a three-pronged "good cause per se" test, which as the court of appeals correctly observed, has no basis in the Education Code's plain text.

Even so, this record supports the board's and Commissioner's decisions. The statute requires evidence of a failure to meet generally accepted standards of professional conduct but not, as Riou suggests, evidence that similarly situated school districts would have ended her contract under these specific facts. District policies implementing state and federal law denote generally accepted standards of professional conduct—such policies reflect standards applicable to school districts throughout the state. Evidence of a failure to meet a district policy that implements state law supports a good cause determination. Accordingly, we reverse the court of appeals and reinstate the Commissioner's decision.

## I

Dehann Riou began working as a fifth-grade teacher in North East ISD in 2006. In 2010, she received a continuing contract from the district, which entitled her to continual employment unless the district ended the contract for good cause.[3] Riou taught fifth grade and third grade at Stahl Elementary, where she received scores of "proficient" or "exceeds expectations" in annual evaluations.

Riou transferred to Royal Ridge Elementary in 2013, where she taught fourth grade for one year before she was assigned to teach kindergarten for the 2014–15 school year. That year, Riou took leave pursuant to the Family Medical Leave Act from April through August. A long-term substitute teacher taught Riou's classes during her absence.

---

[3] *Id.* § 21.154.

Riou received a mixed annual evaluation on May 1, 2015, while she was on leave. The evaluation scored her as below expectations in three categories, proficient in three categories, and exceeds expectations in two categories. When Riou returned to work in August, Royal Ridge principal Deborah Jarvis-Hernandez notified Riou that she had recommended termination of Riou's continuing contract.

In a three-page memo to Riou, Jarvis-Hernandez documented concerns over the lack of progress of Riou's pupils, and in particular, Riou's failure to record grades and conduct benchmark testing—all discovered after Riou went on leave. Jarvis-Hernandez stated that, while assisting another teacher in preparing a lesson plan for Riou's students, she found blank "Benchmark Text/Reading Level Assessment Records" in Riou's classroom. Jarvis-Hernandez stated that the records "should have been completed in early December and again in March in order to complete the Kindergarten report card/checklist for the second and third 9-week grading period." Jarvis-Hernandez also discovered that Riou had failed to ensure parents returned signed report cards as required by district policy.

These discoveries prompted Jarvis-Hernandez to review Riou's entries in the school's electronic grading system. She learned that Riou had not recorded any grades since October 24, 2014—the last day of the first nine-week grading period. Riou had not logged in to the system at all since January 7, 2015 and did not enter grades that day. Riou's failure to record grades meant that the system showed "the same [grades] for all three grading periods since the grades rolled over and duplicated from the first grading period."

Jarvis-Hernandez's review further revealed that although reading level assessments should have been entered for the second and third nine-week grading periods, "[o]nly one report

card/checklist, belonging to a student who had withdrawn earlier in the year . . . had a reading level indicated for the third 9-week grading period." Jarvis-Hernandez identified "three student report card/checklists that had no grades included at all," other grades entered incorrectly (with symbols instead of numbers), and scores recorded in areas "that should not have been scored until later in the year." Additionally, grades for Riou's students furnished to Riou by music and physical-education teachers had not been entered or were entered incorrectly.

On September 15, 2015, the school board notified Riou that it planned to terminate her continuing contract for good cause based on her failure to comply with district policies regarding grading and testing, among other reasons. Riou requested a hearing before an independent hearing examiner.[4] The examiner heard testimony from Jarvis-Hernandez, Riou, other Royal Ridge teachers and employees, and two parents who testified on Riou's behalf.

Jarvis-Hernandez testified at length about the grading and testing irregularities that she had documented in her memo to Riou as well as other issues with Riou's job performance. Concerns about Riou's performance arose during her first year at Royal Ridge while she taught fourth grade. A "summative review' for the 2013–14 school year indicated that Riou was repeatedly late for work, an issue that was "addressed but continue[d] to be an area of concern." Riou also did not submit "response to intervention" paperwork to arrange supplemental services for struggling students. Riou additionally failed to maintain "appropriate pace" under the district's "scope and sequence" policy, which Jarvis-Hernandez testified was "the order and the timeline" for concepts to be taught throughout the school year. According to Jarvis-Hernandez, Riou struggled with these issues during the 2014–15 school year as well.

---

[4] *Id.* §§ 21.159(b)(1), 21.256(c)–(e).

After Riou went on leave, Jarvis-Hernandez discovered blank reading assessment "benchmark cards" in Riou's classroom that should have been completed. Jarvis-Hernandez asked the school's data processor to print out report cards "so we could see where the students were" and found cases where "there were no benchmark grades at all on the report cards, no reading levels." Of the grades entered, Jarvis-Hernandez noted that "whatever was scored for the first nine weeks was the same for the second and the third," leading Jarvis-Hernandez to conclude that Riou had not entered new grades, allowing the first nine weeks' grades to "roll over." The grades Riou had entered indicated that Riou had prematurely scored areas not taught until later in the year, while other grades were improperly entered using symbols instead of numbers. Ultimately, Jarvis-Hernandez concluded that Riou did not conduct benchmark testing during the second and third nine-week grading periods—half the school year—and did not electronically record students' grades during that time, though deadlines for the second and third nine-week grading periods had passed before Riou went on leave. Because no reading benchmark test results existed, Jarvis-Hernandez asked the school's reading specialist to test Riou's pupils. Seven warranted intervention and tutoring—a "high number."

At the beginning of each school year, teachers viewed a video regarding grading policies and acknowledged that they had reviewed the "grading reporting policy." Riou received instruction on the "proper sequence" for kindergarten teachers and multiple reminders about grading deadlines. Jarvis-Hernandez discussed with Riou "ways that I could help her . . . acclimate to kindergarten and the schedule and the requirements for that grade level," and assigned a volunteer retired teacher to mentor Riou.

In her testimony, Riou disputed Jarvis-Hernandez's account. Riou conceded that she did not consistently record students' grades electronically, but she stated that the school's data processor had allowed her to handwrite grades and submit them directly to parents. The school's data processor rebutted Riou's testimony, denying that she had granted Riou an exception to the district's electronic grade-reporting policy. Though Jarvis-Hernandez found no documentation of Riou's grading and reading assessments, Riou testified that she handwrote pupils' scores, and sent them home to parents for the second and third nine-week grading periods. Riou similarly testified that she conducted benchmark testing on printed forms. Riou stated that the school's curriculum "scope and sequence" policy was confusing and her fellow kindergarten teachers were not helpful. Riou testified that she received positive feedback from parents, and two testified on her behalf.

After the hearing, the examiner issued findings of fact and conclusions of law. He concluded good cause existed to terminate Riou's contract. The hearing examiner noted that "[t]he evidence presented clearly showed that [Riou] did not comply with [the district's] Grading and Reporting Procedures/Policy"; that Riou "had reviewed and was aware of" those policies; and that "[e]fforts were made to help [Riou] comply with the directives of her job." The hearing examiner emphasized that "[a] school district is under a duty to the State and Federal government[s] to report the progress or lack thereof of its students," and "cannot fulfill its responsibility if teachers get to decide when and how they are going to assess/grade students." Though he acknowledged state and federal laws requiring grading and assessments, the examiner observed that the district had presented no evidence about standards in similarly situated school districts. The hearing examiner relied on "good cause per se"—an "exception to the usual requirement"—to terminate the contract, based on findings that the district's grading policy was "reasonable," Riou's violation was "clear,"

7

and the "effect on [the district's] business [was] clearly shown." After the hearing, the district and Riou presented oral argument to the school board in closed session. The board adopted the hearing examiner's findings and terminated Riou's contract.

Riou appealed the board's decision to the Commissioner of Education.[5] The Commissioner may reverse a board's decision only if it is "arbitrary, capricious, or unlawful or is not supported by substantial evidence."[6] In affirming the board's decision, the Commissioner observed that "[t]he central issue in this case is whether there exists good cause per se to terminate [Riou's] contract." The Commissioner adopted the hearing examiner's findings of fact and conclusions of law, ruling that the school district had demonstrated "good cause per se." The Commissioner used the examiner's three-part test, concluding that: (1) "[a]ll the rules in question are reasonable"; (2) [s]ubstantial evidence establishes that [Riou] clearly violated all of the relevant rules"; and (3) "[t]he violation of the rules at issue, taken together and in the circumstances found in the present case, had a clear effect on [the district's] business."

Riou then sued in state district court, in further appeal of the board's decision.[7] The trial court reversed the Commissioner's decision and found for Riou, ruling that the Commissioner's good cause determination lacked substantial evidence to support it and the statutory good cause definition had no "good cause per se" exception. The Commissioner and the school district appealed. The court of appeals affirmed, holding that Riou had preserved her objection to a "good cause per se" exception and that evidence does not support the Commissioner's decision.[8] The

---

[5] *Id.* § 21.301(a).

[6] *Id.* § 21.303(b)(1).

[7] *Id.* § 21.307(a)(1).

[8] 581 S.W.3d 333, 341 (Tex. App.—San Antonio 2018).

court of appeals concluded that "the Commissioner's good cause per se standard conflicts with the statutory language of [Education Code section 21.156(a)], and thus may not be used in determining whether good cause exists to terminate a teacher under a continuing contract."[9] We granted the district's and Commissioner's petitions for review.

## II

At the outset, both the school district and the Commissioner contend that Riou did not preserve her challenge to the examiner's reliance on a "good cause per se" exception because Riou did not raise this argument until her case was under judicial review.

### A

A teacher employed under a "continuing contract" is "entitled to continue in the teacher's position or a position with the school district for future years without the necessity for annual nomination or reappointment . . . ."[10] A school district may, however, discharge a continuing contract "for good cause as defined by [Education Code section] 21.156 and in accordance with the procedures provided by [Education Code chapter 21]."[11] The statute defines "good cause" as "the failure to meet the accepted standards of conduct for the profession as generally recognized and applied in similarly situated school districts in this state."[12]

A school board that proposes to end a teacher's continuing contract "must notify the teacher in writing of the proposed action and the grounds for the action."[13] The school board did so here,

---

[9] *Id.* at 345.

[10] TEX. EDUC. CODE § 21.154.

[11] *Id.* § 21.154(4).

[12] *Id.* § 21.156(a).

[13] *Id.* § 21.158(a).

providing a list of reasons, including that Riou (1) "repeatedly failed to comply with campus directives and expectations, along with various District policies, with respect to documenting student performance"; (2) "did not complete required documentation regarding [her] students' performance"; (3) "failed to complete entering student performance data in [the electronic grading system], and some of the data entered was incomplete or inaccurate"; and (4) "failed to ensure that parents return signed report cards." "These issues," the board continued, "resulted in either inadequate student progress or a lack of information sufficient for others to determine [her] students' academic level."

A teacher who protests the proposed termination of a continuing contract may request a hearing before an independent hearing examiner certified by the Commissioner of Education.[14] The Texas Rules of Evidence govern the hearing, and the parties may present evidence and cross-examine adverse witnesses.[15] The examiner may subpoena witnesses and allow depositions and other discovery.[16] "At the hearing, the school district has the burden of proof [to show good cause] by a preponderance of the evidence."[17] The examiner must "make a written recommendation" that "includes proposed findings of fact and conclusions of law" that "may be adopted, rejected, or changed by the [school board]."[18] The board considers the recommendation at its board meeting.[19]

---

[14] *Id.* §§ 21.159(b)(1), 21.252. The hearing is not subject to the Administrative Procedures Act. *See id.* § 21.256(b).

[15] *Id.* § 21.256(c), (d).

[16] *Id.* § 21.255(a), (b).

[17] *Id.* § 21.256(h).

[18] *Id.* § 21.257(a)(1), (a-1).

[19] *Id.* § 21.258(a).

The meeting is non-evidentiary, but each party may present argument.[20] The board may "adopt, reject, or change" the examiner's findings of fact or conclusions of law, but may reject or change a finding of fact only if the fact "is not supported by substantial evidence."[21] Here, the board allowed oral argument, after which the board adopted the hearing examiner's findings of fact and conclusions of law without modification.

The teacher may appeal a board's adverse decision to the Commissioner of Education.[22] The Commissioner performs "a limited review" of a school board's decision.[23] The Education Code confines that review to "the record of the hearing before the hearing examiner and the oral argument before the [school board]."[24] The Commissioner "shall consider the appeal solely on the basis of the local record and may not consider any additional evidence or issue."[25] The Commissioner may hear oral argument and must accept written argument.[26] In deciding the appeal, the Commissioner "may not substitute [his or her] judgment for that of the board unless . . . the decision is arbitrary, capricious, or unlawful or is not supported by substantial evidence."[27] Either party may appeal the Commissioner's decision to a district court, which "shall, under the

---

[20] *Id.* § 21.258(b).

[21] *Id.* § 21.259(b)(1), (c).

[22] *Id.* § 21.301(a). An appeal to the Commissioner is not subject to the Administrative Procedures Act. *Id.* § 21.301(e).

[23] *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010).

[24] TEX. EDUC. CODE § 21.301(c).

[25] *Id.* Yet the Commissioner "has the same authority relating to discovery and conduct of a hearing" as the independent hearing examiner. *Id.* § 21.301(d).

[26] *Id.* § 21.301(c).

[27] *Id.* § 21.303(b)(1).

substantial evidence rule, review the evidence on the evidentiary record made at the local level and any evidence taken by the commissioner but may not take additional evidence."[28]

Judicial review is similarly limited. A court "may not reverse the decision of the commissioner unless the decision was not supported by substantial evidence or unless the commissioner's conclusions of law are erroneous."[29] Review under the substantial-evidence rule is highly deferential—the issue is not whether the agency's decision is correct, but whether the record demonstrates a reasonable basis for it.[30] Thus, the evidence "may preponderate against the decision of the agency and nonetheless amount to substantial evidence."[31] This rule precludes courts "from 'usurping the agency's adjudicative authority even though the court would have struck a different balance.'"[32] In upholding an agency's determination, a reviewing court is not bound by the agency's reasons for its decision when a valid basis exists for the action taken.[33]

**B**

Turning to the facts of this case, we first address error preservation. The examiner concluded that, though neither side presented evidence "directly addressing what is the 'accepted standard in similarly situated school districts,'" the "good cause per se" standard is an "exception to the usual requirement." According to the examiner, under the "good cause per se" standard, "the rule alleged to be violated must be reasonable, the violation must be clear, and the effect on the

---

[28] *Id.* § 21.307(a)(1), (e).

[29] *Id.* § 21.307(f).

[30] *See City of El Paso v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 179, 185 (Tex. 1994) ("At its core, the substantial evidence rule is a reasonableness test or a rational basis test.").

[31] *Tex. Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

[32] *R.R. Comm'n of Tex. v. Pend Oreille Oil & Gas Co.*, 817 S.W.2d 36, 41 (Tex. 1991) (quoting *Tex. State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 117 (Tex. 1988)).

[33] *Pretzer v. Motor Vehicle Bd.*, 138 S.W.3d 908, 914 (Tex. 2004).

school's business must be clear." Based on this exception, he then concluded: "It is my opinion that the facts of this case meet the above referenced criteria, to wit: [the district's] Grading and Reporting Procedures/Policy is reasonable, the disobedience and violation of this rule is clear, and the effect on [the district's] business is clearly shown."

The district and Commissioner correctly observe that the Commissioner's review is limited to issues raised at the "local level." *See* TEX. EDUC. CODE § 21.301(c) ("[T]he commissioner shall consider the appeal solely on the basis of the local record and may not consider any additional evidence or issue."). Through counsel, Riou argued to the school board that the district did not prove good cause to end her contract, though she did not address the examiner's "good cause per se" exception or contend that evidence from similarly situated school districts was lacking.

Riou acknowledges that she "did not expressly specify that the good cause per se standard was the wrong legal standard" before the school board. But she maintains she nonetheless "argued against the sufficiency of the evidence used to support the [hearing examiner's] recommendation." And, "she has continuously argued that [the district] failed to meet its burden of proof to terminate her continuing contract."

The district and the Commissioner characterize Riou's argument regarding the "good cause per se" exception as an unraised issue. But this argument supports Riou's larger position that the Commissioner's decision lacks substantial evidence—a position she has maintained at every stage. Riou argues that the board's decision lacks evidence to support it under the correct legal standard, using the proper statutory definition.[34] While section 21.301(c) confines the Commissioner's

---

[34] *See* TEX. EDUC. CODE § 21.156(a).

review to the "local record," implementation of a per se standard *is* in the local record in this case; the examiner relied on it to find good cause.

Riou's consistent position is that the district lacked good cause to end her contract, and that the board's decision is unsupported by the evidence. That argument fairly includes the examiner's application of an exception that relieved the district from its statutory burden to show that Riou failed to meet professional standards "generally recognized and applied in similarly situated school districts."[35] Riou argued extensively at the school board meeting that the district failed to carry its burden to show good cause, a position she maintained on appeal to the Commissioner. Because her challenge to a "good cause per se" exception falls within the scope of her challenge to the sufficiency of the evidence,[36] we agree with the court of appeals that Riou preserved her challenge to the examiner's use of "good cause per se" in ruling in favor of the district.[37]

### III

We now turn to the merit of Riou's challenge. Because the record contains no evidence that similarly situated school districts would have ended her contract in similar circumstances, Riou contends that the board had no basis for its decision. Riou further contends the Education Code's good cause definition requires such evidence.

---

[35] TEX. EDUC. CODE § 21.154(4). The Commissioner argues that the court of appeals' preservation holding conflicts with *Whitaker v. Moses*, 40 S.W.3d 176 (Tex. App.—Texarkana 2001, no pet.). In *Whitaker*, a teacher argued on appeal that the school board had erred in using a substantial-evidence standard in deciding whether to end his term contract. *Id.* at 178–79. Because the teacher had failed to "bring the matter to the fore" before the school board, the Commissioner held that the teacher's challenge was waived. The court of appeals affirmed, observing that objections must be raised at the local level to be considered on appeal. *Id.* at 179. In this case, Riou challenged the sufficiency of the evidence to support her termination at the local level in argument to the local board. We disapprove of any reading of *Whitaker* that requires more at the local level than a challenge to the sufficiency of the evidence to invoke a substantial-evidence review under the statutory standard.

[36] *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) (observing that while we do not consider unraised issues, "parties are free to construct new arguments in support of issues properly before the Court").

[37] 581 S.W.3d 333, 341–43 (Tex. App.—San Antonio 2018).

14

In his decision, the Commissioner acknowledged that ending a continuing contract "normally requires testimony about standards in other similarly situated school districts" and that "[i]n the present case, there was no such testimony." Like the hearing examiner, the Commissioner adopted a "good cause per se" exception:

> The Commissioner has recognized that there is conduct that is so egregious that no testimony about other districts' standards is needed. To show good cause per se for the violation of a district's rules the Commissioner has held that the rules must be reasonable, the violation of the rules must be undisputable, and the effect on the district's business must be clear.

Thus, we must examine whether section 21.156(a) supports this exception to the district's burden. We construe statutes, like section 21.156(a), de novo and ascertain the legislature's intent from the plain meaning of the words in the statute.[38]

Like the court of appeals, we find no support for the Commissioner's "good cause per se" exception to section 21.156(a)'s requirements. The statute requires evidence that a teacher failed to meet a professional standard that is "generally recognized and applied in similarly situated school districts" to support good cause for ending a continuing contract. The statute contains no exceptions. Nor are any of the elements of the exception that the Commissioner articulates found in the statutory text. The statute gives no indication that "egregious" conduct overrides the school district's burden.[39]

---

[38] *KMS Retail Rowlett, L.P. v. City of Rowlett*, 593 S.W.3d 175, ___ (Tex. 2019) ("When interpreting statutes, we look to the plain meaning of the enacted text. We must enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose.'" (quoting *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014))).

[39] The Commissioner's decision cites *Watts v. St. Mary's Hall, Inc.* in support of the good cause per se standard. 662 S.W.2d 55 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). But the court of appeals in this case—the same that decided *Watts*—disavowed its applicability here because *Watts* "did not involve an employment contract with a governmental unit that is governed by statute and administrative law." 581 S.W.3d at 344. The school board does not urge *Watts* in defending the good cause per se standard to this Court.

15

Contrary to Riou's suggestion, however, section 21.156(a) does not require particularized evidence for her specific facts. It instead requires evidence of a generally applicable standard. Whether a district can end a continuing contract for good cause is measured against "standards of conduct for the profession *as generally recognized and applied* in similarly situated school districts in this state."[40] A standard of conduct that is "generally recognized and applied" in *all* school districts meets the definition. Thus, a state law or regulation imposed generally on *all* districts can be evidence of a "generally recognized and applied" standard of conduct.

Proper grading and testing of students are core responsibilities of Texas teachers. The Education Code requires school districts to "adopt a grading policy, including provisions for the assignment of grades on class assignments and examinations . . . ."[41] It further provides that district policies "require a classroom teacher to assign a grade that reflects the student's relative mastery of an assignment."[42] Districts must "notify the parent or guardian of each student in kindergarten . . . who is determined, on the basis of reading instrument results, to be at risk for dyslexia or other reading difficulties."[43] The Commissioner requires all districts to maintain an "academic achievement record (transcript)" for all students that includes "the record of courses and credits earned."[44] Federal law conditions federal funding on the requirement that states

---

[40] TEX. EDUC. CODE § 21.156(a) (emphasis added).

[41] *Id.* § 28.0216.

[42] *Id.* § 28.0216(1).

[43] *Id.* § 28.006(g).

[44] 19 TEX. ADMIN. CODE § 74.5(b)–(c).

identify, locate, and evaluate all children who have disabilities and need special education and related services.[45]

In this case, the hearing examiner referred to state and federal law in finding that Riou did not meet generally applicable professional standards for teachers. Although exact grading policies may vary, the requirement to follow those policies is a standard "generally recognized and applied" in all Texas school districts, including districts "similarly situated" to the North East Independent School District.[46] The district need not have introduced specific evidence that individual districts view grading and testing as indispensable job responsibilities for a classroom teacher, as that standard is incorporated in state laws.[47]

Evidence from similarly situated school districts is required when a district seeks to prove good cause for reasons unrelated to a generally applicable law or regulation. For example, the Commissioner found no evidence to support good cause for the firing of an athletic director when the director overruled a subordinate's decision to suspend student athletic participation.[48] The athletic director based his decision, at least in part, on concerns over disparate treatment between boy and girl students. In that case, the Commissioner concluded that "[t]here was no evidence

---

[45] *See* 20 U.S.C. § 1412(a)(3).

[46] The district urges that evidence of a "generally recognized and applied standard" is also provided by the Code of Ethics and Standard Practices for Texas Educators, which states that: "The educator shall comply with state regulations, *written local school board policies*, and other state and federal laws." 19 TEX. ADMIN. CODE § 247.2(1)(G) (emphasis added). We disagree, however, that violation of a district policy alone furnishes evidence of a "generally recognized and applied standard."

[47] *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 565 (Tex. 2000) ("Because school boards have 'the exclusive power and duty to govern and oversee the management of the public schools of the district,' . . . a school board must be the ultimate interpreter of its policy, subject to the limits established by the Legislature in its provisions for administrative and judicial review." (quoting TEX. EDUC. CODE § 11.151(b))).

[48] *See* Comm'r Educ., *Evans v. Donna Indep. Sch. Dist.*, Docket No. 091-R2-805, 2005 WL 8146594, at *5– 6 (Sept. 1, 2005).

presented that [the athletic director's] action violates the standards in similarly situated school districts."[49] Without evidence that the athletic director had violated a district policy incorporating a state or federal law or regulation, or otherwise contravened a generally recognized standard, the Commissioner rejected the board's decision. When judgment calls—untethered to any generally applicable law or regulation—are the reason for termination, evidence of accepted standards in similarly situated school districts is necessary to establish the applicable standard of professional conduct the statute requires.

In contrast, the evidence in this case did not implicate a judgment call. Riou failed to comply with the district's policies for grading and testing, which implement express directives found in state and federal law. The district presented evidence that Riou failed to electronically record grades for nearly six months and failed to assess and record her pupils' reading levels during that time. When tested, a high number of Riou's pupils had made little expected progress. Riou presented contradictory evidence. It was up to the examiner and the local school board, however, to resolve conflicts in this testimony. We defer to the board's decision on these matters of credibility.[50]

Mindful of the deferential standard that courts accord local school boards and the Commissioner of Education, we hold that substantial evidence supports the board's decision to end Riou's continuing contract for good cause. The statutory definition does not require evidence that another district would have ended Riou's contract under these specific facts; rather, a district

---

[49] *Id.* at *6.

[50] Under any standard of review, the fact-finder is the sole judge of the credibility of witnesses and the weight to give their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). "They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *Id.* (citations omitted).

must show that the teacher failed to meet a "standard of conduct for the profession" that is "generally recognized and applied."[51] The wholesale failure to properly grade and test students, as required under state and federal law, is some evidence demonstrating a failure to comply with a generally applicable standard of professional conduct for any school district. Within that context, the board had discretion to decide whether to end Riou's continuing contract—Education Code section 21.156 provides that a teacher employed under a continuing contract may be discharged "for good cause *as determined by the board of trustees*."[52] The good cause definition does not read out the school board's discretion.

\* \* \*

We hold that Riou preserved her argument that the board's decision to end her continuing teaching contract lacked substantial evidence because the district failed to adduce evidence of standards recognized and applied in similarly situated school districts. We further hold that the "good cause per se" exception to the statutory standard as articulated by the Commissioner has no support in Education Code section 21.156(a). We reject it as an exception to the requirements set out in the statute. We disagree with the court of appeals, however, that section 21.156(a) always requires evidence from similarly situated school districts to demonstrate generally accepted professional standards. When state or federal law provides a standard, specific evidence from other school districts is unnecessary to establish that the standard is one "generally recognized and applied" in *all* school districts. The school board acted within its discretion in ending Riou's contract because substantial evidence supports its determination that Riou failed to comply with

---

[51] TEX. EDUC. CODE § 21.156(a).

[52] *Id.* (emphasis added).

district policies implementing "generally recognized and applied" standards under state and federal law. Accordingly, we reverse the court of appeals' judgment and reinstate the Commissioner's decision.

_____
Jane N. Bland
Justice

OPINION DELIVERED:  March 27, 2020